We'll now move to Appeal 24-1674 Bolden v. Pesavento et al., and we'll begin Ms. Barnea with oral argument from you. May it please the Court, a jury awarded Mr. Bolden $25 million for past and future physical, mental, and emotional pain and suffering and loss of a normal life. This appeal concerns the prejudgment interest that the District Court added to that sum. The prejudgment interest award should be reversed for two reasons. First, as a matter of law, prejudgment interest should not be available for non-economic damages. And second, granting prejudgment interest was an abuse of discretion under the circumstances here. As I understand it, Ms. Barnea, the City's position is that the fact that Hilliard is an admiralty case is not dispositive. Is that correct? You're asking for us to vacate Hilliard, reverse Hilliard. That is correct. That's not our only argument, but we do think that Hilliard should be overruled because it does not confront the tension between prejudgment interest and non-economic damages. Those two things are not compatible, and that's true across all areas of law, admiralty, section 1983, and any context. When prejudgment interest is appropriate when the damages are economic, because economic damages give the plaintiff his money back, money that was spent, money that was taken, money that should have been earned. That money would have been in a bank account. It would have been earning interest. So a jury's award gives a plaintiff his money back, and then the district court, in its discretion, steps into the shoes of the bank and adds interest, and then the plaintiff is made whole. I have to ask this next question delicately. It's only being asked because you do represent a municipal party, and if the question puts you in an awkward position and you prefer not to answer it, you certainly have that right. The parties apparently have agreed that if prejudgment interest was properly awarded, that Bolden will accept a reduced amount. The agreement is not an ECF. The parties indicate that it can be provided to the court upon request. Do you want to speak to that at all, or would you prefer not to? And that latter does remain an option for you. Sure. The number that we've agreed to as the reduced amount is not in the record, as you say. I'm willing to provide it right now, or I can provide it in a supplemental letter. It is a meaningful amount of money to the city. We are a municipal defendant with limited financial resources, and we work with taxpayer money. I think it's a very fine answer. Thank you. So non-economic damages function entirely differently from economic damages. A plaintiff who suffered intangible harms has lost well-being, and there's no precise dollar amount that can fully reverse the plaintiff's injury. So the money is a rough proxy for what the plaintiff lost. On a practical level, it makes no sense to apply a rate of return to non-economic damages because emotional well-being, if the plaintiff had kept it, can't be invested in a bank account and earn interest. And emotional damages don't accrue evenly with set starting and ending points. Juries also implicitly factor in the time that a plaintiff has waited for the judgment. So compensation for the wait is baked into the award, and the awards are entered in present-day dollars. So there's no gap for prejudgment interest to fill. When prejudgment interest is added to non-economic damages, it becomes a penalty payment for unsuccessful defendants. And that's because with economic damages, a defendant knows the range of money that's at stake at the outset. And as the Milwaukee Cheese case states, a defendant can invest that money during the litigation and then use the proceeds from the interest to satisfy a prejudgment interest obligation. So because of that dynamic, when economic damages are at stake, prejudgment interest isn't punitive. What about this concept of it being a presumptively available, prejudgment interest being presumptively available to victims of a federal law violation? Sure. So all those cases that say that were in the context of economic damages. And for the reasons I've described, that makes complete sense because the defendant knows it's not a penalty in that context. The defendant knows at least the range of money that it's on the hook for. But with non-economic damages, those are highly subjective. They're unknown until the jury renders its verdict. They cannot be approximated in advance. What about the idea that you roll the dice if you want to go to trial and prejudgment interest incentivizes parties to settle? This is a wrongful incarceration case. There's lots of data out there on what juries are giving. So what do you say to that? So because the compensation in a non-economic damages case is baked into the award, there's already an incentive to move things along because a jury is going to know that the plaintiff's been waiting and that compensation for the wait is going to be included in the award. Also, defendants should not be penalized for deciding to go to trial. That's something that defendants are entitled to do. And having prejudgment interest available for non-economic damage also provides an incentive for plaintiffs not to settle, knowing that if they go to trial, there's another additional payment that could be coming, especially if it takes a long time. And I'm not suggesting that that occurred in this case. I'm just talking broadly speaking as a matter of law. So prejudgment interest on non-economic damages is functionally a penalty, and there are numerous cases in the circuit that say that prejudgment interest should not be used as a penalty. Counsel, one of your strongest arguments that I'm hearing here is, well, the prejudgment interest is kind of baked into what the jury is considering, but you made that argument below, and there could have been pretty explicit jury instructions taking that option away from the jury. It's a little muddled here, and Judge Segar made his decision in his findings. I don't know that we can say in every case that the prejudgment interest is baked into the jury's award just because we're dealing with non-economic damages. But if you want to address that a little bit more, go ahead. Sure. In this case, it was clear that it was baked into the award, and that would be true for a case that's asking for past and future compensation, asking for full compensation. There's no specific number that was given, and there's every indication that the award here covered the full range, including any suffering that Mr. Bolden experienced between when his claim accrued and the judgment. Broadly speaking, as I mentioned, cases say that recognize that juries implicitly bake into the award the time that a plaintiff has had to wait. So it is true, broadly speaking, that this is included. And prejudgment interest for non-economic damage, prejudgment interest is supposed to compensate for the loss of use of money. But in a non-economic damages case, there's no claim for the loss of use of money. That plaintiff has lost well-being. So prejudgment interest doesn't serve the same purpose as it does for economic damages. There's no market adjustment that needs to be done. And it's applying a formula to an intangible harm doesn't make practical sense. It's demanding things of non-economic damages that just aren't true. They don't accrue on set starting and ending dates. They amorphously aggregate over time. So it's not a good fit for the prejudgment interest formula. It just doesn't make sense. We do have arguments in our brief about why the award was an abuse of discretion here. I want to be mindful of my time, so I'll reserve the rest of it. Very good. Thank you, Ms. Bernal. We'll move Mr. Litoff to you now for oral argument on behalf of the appellee. Good morning, and please the court. Eli Litoff on behalf of the appellee. Mr. Bolden, it has been the law of this circuit for 40 years that prejudgment interest is presumptively available to victims of federal law violations. And I understand you've got a waiver argument with regard to that being cabin to the admiralty situation, meaning that the city's not arguing that Hellier is limited to admiralty. The challenge that we face as a court in resolving the case is we've got a 1984 decision, and then we've got a lot of district court decisions, but nothing recent. And what we do have quite a while ago is something that seemed to be in a different context. Do you want to speak to the state of our law and why we should recognize prejudgment interest in the non-economic? Yes, Your Honor. So Hellier was an admiralty case, but its reasoning was based on the concept of making the plaintiff whole and providing full compensation, something that is impossible without accounting for the time value of money. That is the same logic that courts apply in all other contexts, including in 1983 cases. And I think it's also important to note that to do what the appellants are asking you to do here would not only be to overturn Hellier and declare that prejudgment interest is categorically unavailable for pain and suffering, but it would also be to split with the 1st, 2nd, 5th, 6th, 9th, and 11th circuits, all of which have applied prejudgment interest to pain and suffering damages and have held that that's appropriate. There's no reason to do that here. I think the discussion of whether prejudgment interest should be awarded for pain and suffering damages has to be grounded in the purposes that prejudgment interest is intended to serve. And there are two dual purposes. It is to compensate the plaintiff for the loss of use of money between the time the claim accrued and the time of the judgment. And it is also to disincentivize delays by defendants and prevent unjust enrichment. Neither of those purposes are impacted by the nature of the injury. And the prejudgment award and interest award in this case served both of those purposes, starting with compensating plaintiffs for the time value of money. There is no dispute that Mr. Bolden's claim accrued on April 19, 2016, when he was exonerated and released from prison. There's no dispute that he promptly and diligently pursued his claims. And there's no dispute that because of the way our legal system operates, it took him over six years to get to judgment, to obtain that compensation to which he was entitled. And he is entitled to compensation for that six-year wait. Let me press you on that a little bit. Non-economic damages, emotional, mental, not a usually liquidable figure. If one is to offer prejudgment interest in a civil case in a trial court, you'd have to have an expert witness to talk about the time value of that money. Very difficult to connect time value as a concept with a non-liquidable amount. You see the dilemma? I do, Your Honor. And the courts over the years have sort of departed from that hard and fast rule of whether it's liquidated or unliquidated damages being dispositive. I think what's important is that the Imoco-Cadiz case, for example, from this court, says it might take time for the victim to obtain the judgment, but once there is a judgment, the obligation is dated from the time of the injury. And this is not, I think one thing that's important to be clear about is this is not about giving him interest for the 22 years he was suffering in prison. That's not what this is about. This is about granting him interest for the six years after his claim accrued when he was pursuing his claims and awaiting his judgment. It's not about compensating him for those decades behind bars. It's about the six years that he was waiting, and that is a compensable amount regardless of the nature of the injury. In addition to providing full compensation, the second important purpose of prejudgment interest is to deter delays, to disincentivize delays, essentially to act as a general deterrent. And without prejudgment interest, defendants have incentive to delay. They have incentive to hold the money that might be used to compensate the plaintiff, to earn interest on it, and then to use that interest to satisfy the ultimate damages award and reduce their out-of-pocket expense. And this general deterrence purpose is served, again, regardless of the injury. During the entire time this case was pending, those whole six-plus years, the city had the benefit of that money that it was holding and not Mr. Bolden. It's true that in a case with pain and suffering damages, the defendant doesn't know exactly how much might be due to the plaintiff as compensation, but that's true in many cases. In a contract case, damages are disputed. You never know with certainty how much is going to be awarded until you get the jury verdict. The fact that they didn't know if it was going to be $25 million, $10 million, $15 million, it doesn't matter. They held that money and had the benefit of it, earned interest on it, during that six-year period. And that, the case law has said, is essentially unjust enrichment if we allow them to benefit from the time value of that money. That is in the Rivera case from this court that talks about that we have to not only fully compensate victims but also prevent unjust enrichment. And also in the matter of Milwaukee Cheese case that my opposing counsel cited, they said that's why an interest award, no matter how large, can't be punitive. The defendants can invest those funds while the litigation proceeds and then use the interest to satisfy the obligation. So, because pain and suffering damages are not categorically excluded from a pre-judgment interest award, the only question is whether the district court abused its discretion in determining that pre-judgment interest was appropriate here. And the court did not. The city argues that the jury intended to make Mr. Bolden whole, that the juries factor in the weight. That is complete speculation. Judge Kolar, you hit on this point. The city made that argument below. They said this was already baked in. The award fully compensated the plaintiff. And Judge Seeger reviewed the record, looked at the jury instructions, looked at the trial transcript, looked at the closing arguments, and found that the jury compensated Mr. Bolden for his incarceration, not for the time value of money since then. That's at pages 3 and 4 of the opinion. That is a reasonable exercise of the court's discretion. The only question here is whether no reasonable court could have found that. And it's impossible to say that based on this record. It's also a reasonable exercise of the court's discretion because in the Seventh Circuit, as the court found, it's the court's job to award pre-judgment interest, not the jury's job. And so to speculate that the jury took this into account when there is no mention in the trial record of the time value of money, of interest rates, it would be speculation, and it was certainly not an abuse of discretion for the court to find that the jury did not intend to compensate Mr. Bolden for the time value of money. In that same vein, you know, the city says that the award compensated for future damages, which are not eligible for pre-judgment interest. Again, that is an argument that was made below. It was briefed extensively. There were arguments about why the entire award was for past damages. There were even alternative calculations proposed by Mr. Bolden that said, if Your Honor agrees with that, that some future damages are baked in, here is an alternative calculation. You can say $22 million was for past damages for the 22 years incarcerated. Counsel, but Judge Seeger didn't actually address that argument. So this is a challenge that I have with the order, that the past, future, it might have been argued extensively, but where is it in his order specifically? It's at pages 3 and 4, Your Honor, where the court conducted a careful review of the record. It says, reviewed the transcripts from closing arguments in which counsel asked for compensation for Mr. Bolden's incarceration and determined, quote, the jury had awarded damages for the 22 years that Bolden spent in prison. That was the finding, and it was supported by the record. And again, this is in our briefing below at docket number 695, where we grappled with this issue. And what was clear is that 22 years and the notion of compensating Mr. Bolden on a year-by-year basis was the center of the trial. During closing arguments, this is part of what Judge Seeger examined when he said he looked at the closing transcripts. Plaintiff's counsel said, what you're going to have to do is decide on what is the value of a year of a man's life, asking the jury to award $1 to $2 million per year that he was incarcerated. Defense counsel spoke in terms of years as well, saying Mr. Bolden was seeking $1 to $2 million per year, and therefore he has 22 million reasons to lie to you. He wants $22 million. The jury was asked to compensate Mr. Bolden. I see I'm out of time. To compensate him based on years incarcerated. Judge Seeger looked at the record, determined that's what the jury did. You can't say that no reasonable judge would reach that conclusion. I actually have a follow-up. Sure. So what do I do about these jury instructions that say you will fairly compensate Plaintiff for any injury that you find he sustained and is reasonably certain to sustain in the future? And there's other references to the future. What do we do with those jury instructions? The jury absolutely was permitted to award damages for future pain and suffering. And if Judge Seeger, examining the record, had said, based on these instructions, based on the testimony, based on closing arguments, I have to conclude that some portion of the award was for future damages, that would have been in the court's discretion as well. But the jury did not have to award compensation for future damages. The jury was free to say, you know, he was incarcerated for 22 years. This is how much that's worth. We're not giving him anything. I guess we don't know because the verdict form just has a single line, right? So we don't – one can assume that most of that was for incarceration. Twenty-two years is not a small amount of time, but there's a fuzziness there, right? And this was an agreed verdict form, is that correct? That is correct. Okay. That is correct. And there's a fuzziness there, no doubt about it, and that's why it's committed to the discretion of the district court, who, by the way, was extremely attentive during trial, who was engaged in all of the witness testimony, who was hearing the arguments presented, to look at it and make the determination within his discretion that the jury was asked to award compensation for the years he spent in prison, and that is what they did. And again, Your Honor, it would have been if Judge Seeger would have said, you know, I think X was for the past suffering, but the jury had to factor in some amount for future, that would have been within his discretion as well. But what this city is asking this court to do is essentially substitute its view of the record for that of the trial judge, and that's not appropriate here. Very good. Thank you, Mr. Litoff. Thank you. Ms. Barnea, we'll go back to you now for rebuttal argument. I want to address a few points that opposing counsel raised. We explained in our brief why Hillier should be over, especially be overruled. Hillier did not, as I mentioned, did not confront any of these tensions that we've been discussing, neither do the cases it relies on. And as to the point that we had Mr. Bolden's money during the wait, the city defendants did not take one penny of Mr. Bolden's money. This was not a case about a loss of money. Defendants did not know the amount of money that was at stake. There was no way that the defendants could have held it. Mr. Bolden asked for $44 million during trial. It is not, would not have been feasible when the claim was, when the claim accrued for the defendants to have put a prejudgment interest amount aside. Also, there has been no case since Hillier in the circuit that has awarded prejudgment interest for non-economic damages. District courts have, but not our courts. That's correct. That's correct. And the unjust enrichment concept that opposing counsel raised, that makes sense, again, when there are economic damages at stake, but not when there are non-economic damages. I also want to address the lump sum issue. It's error to find that the award did not include any future damages. That is not a reasonable reading of the record. The jury was explicitly instructed to award any injury that it found he sustained and is reasonably certain to sustain in the future. Juries are presumed to follow those instructions, and during trial there was testimony from three witnesses about Mr. Bolden's experience after he was released from prison. This was front and center. The request was, in closing argument, $44 million for past damages and then an unstated amount for the future. There is no doubt that the award includes some amount for future damages, and that's ineligible for prejudgment interest. There's also no path here to identify how much of the award was just for past damages. There is no information in the record that could lead to make that determination. Thank you very much, Ms. Barnea, and thank you very much, Mr. Litoff. The case will be taken under advisement, and that will complete our oral arguments for the day.